IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**NEW MEXICO HORSEMEN'S ASSOCIATION,**

    Petitioner,

v.                                                1:24-cv-00235

**SUNRAY GAMING OF NEW MEXICO, L.L.C.,**
**Dba SUNRAY PARK & CASINO,**

    Respondent.

### PETITIONER'S COMPLAINT FOR DECLARATORY JUDGMENT, EMERGENCY PETITION FOR TEMPORARYRESTRAINING ORDER/PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

**COMES NOW**, Petitioner New Mexico Horsemen's Association (*hereafter "Horsemen"*), by and through its attorney, GARY C. MITCHELL, P.C. (G*ary C. Mitchell*), and for its Petition for Declaratory Judgment, Temporary Restraining Order/Preliminary Injunction and Permanent Injunction against Sunray Gaming of New Mexico, L.L.C., d/b/a SunRay Park & Casino *(hereinafter "SunRay")* states:

### JURISDICTION OF THE UNITED STATES DISTRICT COURT

1. The United States District Court in and for the District of New Mexico has original jurisdiction pursuant to *28 U.S.C.A. § 1331 Federal Question* as the action arises under the laws of the United States.

2. The specific law of the United States involved in this case is *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering.*

3. Both parties are entities doing business in the State of New Mexico and the controversy

occurred in the State of New Mexico.

## FACTS SUPPORTING PETITION FOR DECLARATORY JUDGMENT, ISSUANCE OF TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION.

4. The **New Mexico Horsemen's Association (Horsemen)** is not for profit, benevolent association involved with horse racing in New Mexico whose members are comprised of those owning, breeding, caring for race horses and those who are training and racing horses in the State of New Mexico.

5. The **Horsemen** have been representing horsemen racing in New Mexico since 1966 and have a membership of approximately 4000 members.

6. The **Horsemen** are the largest [with the most members in an association] advocacy group representing race horse owners and trainers in the State of New Mexico.

7. The licensees each member of the **Horsemen** holds as a trainer and/or owner are bestowed by the New Mexico Racing Commission an agency of the State of New Mexico.

8. The **Horsemen** are governed by a Board whose members are selected through election by its members.

9. The **Horsemen** have at every racetrack an elected local committee.

10. Respondent Sunray Gaming of New Mexico, L.L.C. dba SunRay Park and Casino [**SunRay**] is one of five associations presently allowed a license and association to race horses at a facility and to have a casino in the State of New Mexico in accordance with New Mexico Law.

11. **SunRay** is located in the County of San Juan, State of New Mexico and is owned according to their license application with the State of New Mexico by SunRay Gaming of New Mexico, L.L.C., a domestic limited liability company whose address is 39 Road 5568, Farmington, NM 87401. Bradley Boehm is their General Manager.

12. Federal law governs the regulation of interstate off-track wagering which is the subject of this Petition. *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering*

13. There is in effect pursuant to the laws of the United States the following:

    *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering* states:

    (a) Consent of host racing association, host racing commission, and off-track racing commission as prerequisite to acceptance of wager
    An interstate off-track wager may be accepted by an off-track betting system only if consent is obtained from--
    　(1) the host racing association, except that--
    　　(A) as a condition precedent to such consent, said racing association (except a not-for-profit racing association in a State where the distribution of off-track betting revenues in that State is set forth by law) must have a written agreement with the horsemen's group, under which said racing association may give such consent, setting forth the terms and conditions relating thereto; provided,[**emphasis mine**]
    　　(B)that where the host racing association has a contract with a horsemen's group at the time of enactment of this chapter which contains no provisions referring to interstate off-track betting, the terms and conditions of said then-existing contract shall be deemed to apply to the interstate off-track wagers and no additional written agreement need be entered into unless the parties to such then-existing contract agree otherwise. Where such provisions exist in such existing contract, such contract shall govern. Where written consents exist at the time of enactment of this chapter between an off-track betting system and the host racing association providing for interstate off-track wagers, or such written consents are executed by these parties prior to the expiration of such then-existing contract, upon the expiration of such then-existing contract the written agreement of such horsemen's group shall thereafter be required as such condition precedent and as a part of the regular contractual process, and may not be withdrawn or varied except in the regular contractual process. Where no such written consent exists, and where such written agreement occurs at a racing association which has a regular contractual process with such horsemen's group, said agreement by the horsemen's group may not be withdrawn or varied except in the regular contractual process;
    　(2) the host racing commission;

(3) the off-track racing commission.
(b) **Approval of tracks as prerequisite to acceptance of wager; exceptions**
(1) In addition to the requirement of subsection (a), any off-track betting office shall obtain the approval of--
(A) all currently operating tracks within 60 miles of such off-track betting office; and
(B) if there are no currently operating tracks within 60 miles then the closest currently operating track in an adjoining State.
(2) Notwithstanding the provisions of paragraph (1) of this subsection, any off-track betting office in a State with at least 250 days of on-track parimutuel horseracing a year, may accept interstate off-track wagers for a total of 60 racing days and 25 special events a year without the approval required by paragraph (1), if with respect to such 60 racing days, there is no racing of the same type at the same time of day being conducted within the off-track betting State within 60 miles of the off-track betting office accepting the wager, or such racing program cannot be completed. Excluded from such 60 days and from the consent required by subsection (b)(1) may be dark days which occur during a regularly scheduled race meeting in said off-track betting State. In order to accept any interstate off-track wager under the terms of the preceding sentence the off-track betting office shall make identical offers to any racing association described in subparagraph (A) of subsection (b)(1). Nothing in this subparagraph shall be construed to reduce or eliminate the necessity of obtaining all the approvals required by subsection (a).
(c) **Takeout amount**
No parimutuel off-track betting system may employ a takeout for an interstate wager which is greater than the takeout for corresponding wagering pools of off-track wagers on races run within the off-track State except where such greater takeout is authorized by State law in the off-track State.

14. The **Horsemen,** by federal law, are the group which pursuant to the *Interstate Horseracing Act 15 U.S.C.A. § 3001 et. seq.*, must approve simulcast agreements between licensed horse racetracks/casinos [known as racinos] in the State of New Mexico.

15. Pursuant to *15 U.S.C.A. § 3004,* interstate off-track wagers may be accepted [known as simulcasting] provided there is a written agreement with the horsemen's group and in New Mexico that group is the **Horsemen** [New Mexico Horsemen's Association] the Petitioner in this case.

16. Under the *Interstate Horseracing Act 15 U.S.C.A. § 3001 et. seg.*, to participate in off-track wagering a host racing association must consent and must have a written agreement

with the horsemen's group, under which said racing association may give such consent, setting forth the terms and conditions relating thereto, and thus, the Act requires more than just a written agreement between the association and the horsemen's group, but rather requires that the association's consent to off-track betting be given under the written agreement, which must set forth the terms and conditions of that consent. ***Horseman's Benevolent & Protective Ass'n-Ohio Div., Inc. v. DeWine,*** C.A.6 (Ohio) 2012, 666 F.3d 997.

17. The **Horsemen** have a fiduciary duty pursuant to ***15 U.S.C.A. § 3004 Regulation of interstate off-track wagering*** to the **Horsemen** members, to the horse racing industry and to taxpayers to follow the law and made certain racetrack/casinos [racinos] such as **SunRay** do the same.

18. The New Mexico Racing Commission Rules and Regulations specifically provides:

    A. General Provisions: No person shall conduct or attempt to conduct interstate, or intrastate, simulcast wagering unless authorized and permitted to do so by the commission.
     (1) No person shall attempt to conduct wagering on the results of a simulcast unless an agreement has been executed between the host and guest track operators, the agreement has been approved by the New Mexico Horsemen's Association and the agreement is filed with the commission. ***NM ADC 15.2.7.10***

19. The Petitioner **Horsemen** have attempted to negotiate with the Respondent, **SunRay**, a simulcast agreement but **SunRay** refuses to enter into an agreement with the **Horsemen**.

20. Inherent in simulcasting horse races is having legitimate horse races with good purses to run for and to protect the public, the betting public, the horses, the trainers, the owners and all members of the horse racing industry so the public can have confidence in the integrity of the operations thus it is necessary the conditions of the race and horseracing

be transparent, realistic, fair and honorable. The **Horsemen** attempted to get that done but **SunRay** has refused.

21. The **Horsemen,** on February 22, 2024, sent to **SunRay** a contract/agreement in accordance with *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering.* The forwarding email stated,

    Dear Steve,

    Please find attached a draft of the simulcast contract for the 2024 race meet. I look forward to reviewing it with you as we work to have a successful race meet this year for Sunray Park and for the horsemen. Let me know how we can help to smooth things out in the next few days.

    Thank you,

    Dr. Paul Jenson  
    cell: 915-525-3169  
    President, New Mexico Horsemen's Association

22. A true and correct copy of the agreement sent by the **Horsemen** to **SunRay** is marked **Exhibit A** attached hereto and by reference thereto made a part hereof.

23. The **Horsemen** have been advised by **SunRay**, no agreement would be entered into between the **Horsemen** and **SunRay**.

24. **SunRay** has also threatened the **Horsemen** directors/members with banishment from the 2024 race meet if the **Horsemen** sought to enforce the provisions of **NMHA** *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering* or insisted on the entering of the parties to a simulcast agreement or interfered with the simulcast signal.

25. Petitioner **Horsemen** have exhausted all remedies available except that of the Courts.

26. If **SunRay** is not restrained and permanently enjoined federal law will not be complied with and the **Horsemen** directors/members will all suffer significant damages.

27. The Sunray meet starts April 12, 2024 and runs through May 19, 2024 and millions of dollars of prize money is at stake, as are business relationships and business reputations given the **Horsemen** officers, board of directors and members of committees are also trainers and horse owners who will be precluded from participating.

28. No **Horsemen** officer **or** director has committed an unlawful act or a violation of the rules of racing for which the penalty requires expulsion or removal from the 2024 SunRay race meet.

29. The race meet is 18 live racing days, 12 races a day, training begins on March 29, 2024 and by the time a trial is had the meet will be over, federal law will not be complied with and the full damages done thus the emergency and the necessity for a temporary restraining order and permanent injunction.

30. The District Court has the power, at law to demand compliance with federal law, declare that federal law requires **SunRay** enter into a simulcast agreement with the **Horsemen** and in equity, to prevent the **Horsemen** losing out on race purse funds and assets until further determination of the Court, including a final trial, to preserve the *status quo* and prevent the loss of assets or funds (race winnings) which would be impossible, as a practical matter, to ever recover once distributed to other race participants. ***Citizens Bank of Pennsylvania v. Myers***, 872 A.2d 827, ¶ 19 (Sup. Ct. Pa. 2005) (collecting cases where courts havegranted an injunction to prevent dissipation of funds). *See also* **In Re Najawicz**, 2009 WL 3088327, *4-5 (Virgin Islands, 2009) (unpub.) (holding that an *ex parte* TRO is a valid civil equitable remedyand is guided by the rules of civil procedure).

## A TEMPORARY RESTRAINING ORDER (TRO) IS APPROPRIATE AND JUSTIFIED TO PREVENT IRREPERABLE HARM

31. The standard for issuance of a TRO under **FRCP Rule 65** is essentially the same as that for a preliminary injunction except that a TRO is to last for a short time and can be issued *ex parte*, without notice to the adverse party. *See **Eastman v. United States,*** United States District Court, D. New Mexico, July 15, 2022, 615 F.Supp.3d 1250; (holding that the standards for a TRO are the same as those for a preliminary injunction).

32. Under **FRCP Rule 65,** a party can seek a TRO without giving notice, but: (1) must submit facts that show "immediate and irreparable injury, loss or damage will result" to the party seeking the TRO before the adverse party or his attorney can be heard, and (2) the applicant's attorney must certify to the court any efforts to give notice and the basis for asserting that notice should not be required. When a party seeks a TRO, the standards for issuance of a preliminary injunction apply. In this case, **Horsemen** elect to proceed under **FRCP Rule 65** to seek a TRO with notice to Respondents. Time is of the essence, by the time notice, briefing and hearing could occur, the race meet will likely be over or substantially over and the damages incurred so a prompt hearing is necessary.

33. For all of the foregoing reasons, **Horsemen** requests that this Court hold a prompt hearing, issue a TRO/preliminary injunction as soon as is possible and then set a hearing where all parties may argue for or against converting the TRO into a permanent injunction.

34. The following support the issuance of a TRO/preliminary injunction: *First*, as to irreparable injury, is the violation of federal law by **SunRay** *Second,* as stated above, the loss of purse monies, the damages to reputations and business relationships and business operations and opportunities are certain to occur. *Third*, as to balancing the equities of possible harm caused by an injunction, the harm to the **Horsemen** will be great if the

retaliatory exclusions stand, whereas the harm to **SunRay** is trivial because it will only be a loss of spite; there will be no economic harm whatsoever to Respondent by complying/restoring things to their status quo and in compliance with federal law. The equities lean sharply in favor of the **Horsemen**. *Fourth,* the public interest, weighs in favor **Horsemen** because there is no public benefit to allow innocent parties to be retaliated for following state and federal law, indeed the opposite, it is clearly in the public's best interest for all laws to be followed, including those regulating horse racing. The public will not be harmed by a TRO/preliminary injunction in favor of the **Horsemen;** indeed the public will benefit from the TRO. *Fifth*, the likelihood the **Horsemen** will prevail on the merits also tilts in **Horsemen's** favor. Thus, justice demands that a prompt hearing be held, a TRO/preliminary injunction be issued at least until the case can be prosecuted and a permanent injunction issued thereafter.

## CONCLUSION & REMEDY SOUGHT

For all of the foregoing reasons, the standard for a TRO/preliminary injunction is met and the Court should order and declare **SunRay** must have a written agreement with the **Horsemen** in order to simulcast; the exclusions of **Horsemen** directors/members be rescinded and at a prompt hearing a TRO/preliminary injunction be issued and the Court then hold a permanent injunction hearing.For all of the foregoing reasons, **Horsemen** ask that the Court issue:

1. A declaratory judgment in favor of petitioner, **New Mexico Horsemen's Association (Horsemen)** declaring that pursuant to *15 U.S.C.A. § 3004 Regulation of interstate off-track wagering* respondent, **SunRay** must have a written agreement with the **New Mexico Horsemen's Association** in order to simulcast or if no agreement

**SunRay** cannot simulcast or enter into simulcast agreements with other racinos and racetracks no matter where located;

2. A temporary restraining order /preliminary injunction which requires **SunRay** enter into a written agreement with the **Horsemen** or not simulcast;

3. A temporary restraining order/preliminary injunction precluding **Sunray** from enforcing its exclusion/banishment of the **Horsemen** directors and members from the 2024 race meet; and

4. A permanent injunction be ordered requiring **SunRay** comply with federal law, enter into a simulcast agreement with the **Horsemen** and not exclude/banish licensed **Horsemen** Directors/Members;

5. Any such other relief the Court deems just.

Respectfully submitted,

GARY C. MITCHELL, P.C.

By /s/  Gary C. Mitchell
Gary C. Mitchell
P.O. Box 2460
Ruidoso, New Mexico 88345
Telephone:  (575) 257-3070
Email: gary@gmlaw.org

*Attorneys for Plaintiff New Mexico Horsemen's Association*

This Petition is being filed on an emergency basis.