**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

NEW MEXICO HORSEMEN'S ASSOCIATION,

      Petitioner/Counter-defendant,

v.

SUNRAY GAMING OF NEW MEXICO, LLC, dba
SUNRAY PARK & CASINO,

      Respondent/Counterclaimant

and

DOWNS AT ALBUQUERQUE, INC., dba
THE DOWNS RACETRACK & CASINO and
ALL-AMERICAN RUIDOSO DOWNS, LLC, dba
RUIDOSO DOWNS RACE TRACK AND CASINO,

      Plaintiffs in Intervention,

v.                                      Case No. 1:24-cv-00235-MLG-DLM

NEW MEXICO HORSEMEN'S ASSOCIATION,

      Defendant in Intervention,

and

DOWNS AT ALBUQUERQUE, INC., dba
THE DOWNS RACETRACK & CASINO and
ALL-AMERICAN RUIDOSO DOWNS, LLC, dba
RUIDOSO DOWNS RACE TRACK AND CASINO,

      Third-Party Plaintiffs,

v.

DR. PAUL JENSON, DVM, and
SEAN ALFORTISH,

      Third-Party Defendants.

1

**MEMORANDUM OPINION AND ORDER**
**DENYING EXPEDITED MOTION FOR RECUSAL**

This matter comes before the Court on Sean Alfortish's Expedited Motion for the Hon. Matthew Garcia, U.S. District Judge, To Recuse Himself from All Proceedings Going Forward and Re-Assign the Case. Doc. 29. For the reasons explained in detail below, the motion is denied.

## PROCEDURAL HISTORY

A.     **The New Mexico Horsemen's Association sues Sunray Gaming of New Mexico, LLC**

This litigation began after the New Mexico Horsemen's Association ("NMHA") filed suit against Sunray Gaming of New Mexico, LLC ("Sunray"). NMHA asserted that Sunray was violating (or intended to violate) the Interstate Horseracing Act ("IHA"), 15 U.S.C. § 3001 *et seq.* (2000), by allowing interstate off-track wagering without first obtaining permission from the NMHA. Doc. 1; Doc. 2. The NMHA also claimed that Sunray was unlawfully excluding some NMHA members (and their horses) from its facilities. Doc. 1. NMHA's complaint sought, inter alia, a temporary restraining order ("TRO") barring Sunray from engaging in off-track wagering and requiring the racetrack to open its gates to all NMHA members. *Id.*

An evidentiary hearing on NMHA's request for a TRO was held one week after the organization filed its complaint. Doc. 12. Ultimately, the Court denied NMHA's application for a TRO and issued an opinion memorializing the reasoning for that decision approximately two weeks later. Doc. 17.

Thereafter, the Downs at Albuquerque, Inc. ("Albuquerque Downs"), and the All-American Ruidoso Downs, LLC ("Ruidoso Downs"), intervened in this matter.[1] Doc. 11. They did

_____

[1] Sunray, Albuquerque Downs, and Ruidoso Downs are collectively referred to hereafter as "the Racetracks."

so without objection from the NMHA. Doc. 21. The Racetracks then filed their Complaint in Intervention and Third-Party Complaint. Doc. 23. They assert various causes of actions against NMHA and claim entitlement to damages and an injunction; the Racetracks' complaint also named Dr. Paul Jenson and Sean Alfortish as defendants and requested various forms of relief against them individually.[2] *Id.*

**B.     Alfortish's Motion to Recuse and the Response**

After the Racetracks filed their complaint in intervention, and after the Court denied NMHA's request for a TRO, attorney A. Blair Dunn entered his appearance on behalf of Alfortish. Doc. 26. Alfortish subsequently filed an "expedited motion" requesting my recusal from this matter pursuant to 28 U.S.C. § 144 and 18 U.S.C. § 455(a). Doc. 29. The NMHA did not take a position on that request, and the Racetracks have filed a response in opposition. Doc. 33. Alfortish filed his reply on May 12, 2024, and a notice of completion of briefing followed shortly thereafter.[3] Doc. 45; Doc. 46.

**DISCUSSION**

**A.     General legal principles regarding recusal**

Typically, the presiding judge decides a motion seeking his or her recusal. *See, e.g.*, *Burleson v. Sprint PCS Grp.*, 123 F. App'x 957, 960 (10th Cir. 2005) ("[Movant] cites no authority, and we know of none, requiring a different judge to act on a recusal motion."); *Doe v. Martinez*,

---

[2] Jenson and Alfortish are NMHA members.

[3] The Court considered holding an evidentiary hearing on the matter, but Alfortish e-mailed indicating he was not available to appear at a hearing during the week of April 29, 2024. That communication did not include any future dates on which Alfortish would be available for a hearing. Further, Alfortish's motion seeks expedited relief, and the Racetracks have filed a motion for an injunction which also seeks resolution on an expedited basis. Doc. 25; Doc. 27. Other motions are also pending. *See* Doc. 42; Doc. 44. So, in the interest of expediency and to keep this matter moving forward, the Court opts to rule on the matter without an evidentiary hearing.

No. CIV-09-104, 2009 U.S. Dist. LEXIS 140666, at *8 (D.N.M. June 11, 2009) ("Federal law is clear that a motion for recusal must be decided by the judge whose recusal is requested.") (collecting cases); *see also Johnson v. Altamirano*, No. 3:19-CV-01185, 2019 U.S. Dist. LEXIS 169346, at *9 (S.D. Cal. Sept. 30, 2019) ("Section 144 permits a challenged judge to rule on the legal sufficiency of the challenger's affidavit and does not require a judge to assign a recusal motion to another judge for hearing where the affidavit is insufficient.") (quoting *Arunachalam v. Pazuniak*, No. 14-CV-05051, 2015 U.S. Dist. LEXIS 187780, at *1 (N.D. Cal. Feb. 9, 2015)). Whether to grant a motion to recuse—founded on either Section 144 or Section 455—is left to the judge's discretion. *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987); *see also Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982) ("A recusal motion under both statutes is committed to the sound discretion of the district judge."). In considering such a request, a judge should ask whether "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (quoting *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)); *see also* 28 U.S.C. § 455(a). The standard is an objective one, and "[t]he burden is not on the judge to prove that he [or she] is impartial." *Baffert v. Churchill Downs, Inc.*, Civil Action No. 3:22-cv-123, 2023 U.S. Dist. LEXIS 27307, at *17 (W.D. Ky. Feb. 17, 2023) (quoting *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007)). Rather, "judges are presumed to be capable of carrying out their sworn duties faithfully and impartially" and "the party seeking disqualification bears the substantial burden of proving otherwise." *Smartmatic USA Corp. v. Herring Networks, Inc.*, Civil Action No. 1:21-cv-02900, 2023 U.S. Dist. LEXIS 224087, at *11 (D.D.C. Dec. 16, 2023) (quoting *United States v. Ali*, 799 F.3d 1008, 1017 (8th Cir. 2015)).

**B.     Alfortish has not complied with the procedural requirements of Section 144, and he has not provided a substantive basis justifying his request for recusal.**

With legal principles as a guide, the Court first considers whether recusal is warranted

pursuant to Section 144. That provision provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. As the statutory text indicates, the moving party must timely proffer one—and

only one—affidavit demonstrating bias or prejudice. *See, e.g.*, *United States v. Brocato*, 4 F.4th

296, 301 (5th Cir. 2021) (discussing requirements necessary for a "sufficient" affidavit submitted

pursuant to Section 144). The assertions therein are "strictly construed against the affiant and there

is a substantial burden on the moving party to demonstrate that the judge is not impartial." *Burger*,

964 F.2d at 1070. To clear that hurdle, the party seeking recusal "must state with required

particularity the identifying facts of time, place, persons, occasion, and circumstances" suggesting

partiality. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). And while the averments

presented in the affidavit should be given credence, mere "conclusions, rumors, beliefs and

opinions" are insufficient. *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988). "[T]here must

be a reasonable factual basis to question the judge's impartiality." Order Denying Plaintiff's

Motion to Recuse at 3, *Hix v. SKS Dev., LLC*, No. 1:24-cv-00175 (D.N.M. Mar. 27, 2024), ECF

No. 24. "[J]udges should not recuse themselves solely because a party claims an appearance of partiality." *Smartmatic USA Corp.*, 2023 U.S. Dist. LEXIS 224087, at *11.

Here, Alfortish and his counsel have submitted three affidavits in support of recusal—one from Dunn, one from Alfortish, and one from Denise Chambliss.[4] The affidavits generally assert that I was involved in this litigation during my tenure as a governmental employee. For example, Dunn's affidavit[5] claims the Court "was directly involved with the dispute between the NMRC,[6] the racetracks and the New Mexico Horseman's [sic] Association *directly at issue* in this litigation in his capacity serving the Governor." Doc. 29-1 at 2 ¶ 2 (emphasis added). However, his sworn statement does not identify any legal action in which the Court acted as counsel, adviser, or material witness in matters concerning this proceeding, nor does he point to any instance in which

---

[4] Alfortish's motion does not comply with Section 144's procedural requirements. Specifically, that statute limits him to one—and only one—affidavit in support of his recusal request. *See, e.g.*, Order Denying Plaintiff's Motion to Recuse at 3, *Hix*, No. 1:24-cv-00175 (denying a motion to recuse and noting "[a] party may only file one such affidavit" in support of a request under Section 144). Alfortish also did not provide a certificate stating that the affidavit is made in good faith as the statute requires. 28 U.S.C. § 144; *see also Springer v. Seventh Jud. Dist. Ct.*, No. 1:23-cv-00499, 2023 U.S. Dist. LEXIS 194383, at *16 (D.N.M. Oct. 30, 2023) (denying a request from one of Dunn's clients requesting that Judge Margaret Strickland recuse herself). These errors and omissions, standing alone, would be sufficient grounds to deny Alfortish's request under Section 144. *See, e.g.*, *W. Watersheds Project v. Interior Bd. of Land Appeals*, 434 F. Supp. 3d 1257, 1261 (D. Utah 2020) (noting that "Section 144's technical requirements are not pointless procedural preconditions," and that "[c]ourts have routinely concluded that failure to comply with [the statute's] requirement[s] is grounds for denying the motion."). Nevertheless, giving Alfortish the benefit of the doubt, the Court will consider all three affidavits and the representations made therein as a collective whole and assume the submissions were made in good faith.

[5] Section 144 requires the party to submit an affidavit in support of recusal, not counsel.

[6] This abbreviation is not defined in either Alfortish's motion or the accompanying affidavits. However, the Court confirmed this abbreviation is intended to be shorthand for the New Mexico Racing Commission ("NMRC").

the Court expressed an opinion regarding the merits of this matter before taking the bench.[7] *See id*.; *cf.* 28 U.S.C. § 455(b)(3) (requiring recusal where a judge has previously served in governmental employment "and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy"). Furthermore, he does not identify who had these conversations or when they supposedly occurred. *Hinman*, 831 F.2d at 939 (noting that an "affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances."). His affidavit is predicated entirely on conclusory allegations (from an unidentified source) that I was somehow involved in this dispute—even though this case was not initiated until more than a year after my appointment to the bench. *See generally* Doc. 29-1.

The other two affidavits provided in support of Alfortish's motion are similarly lacking. They are based solely on information Dunn relayed to the affiants. For example, Alfortish's affidavit states that Dunn reported I "had previously been involved in the issues in this litigation in his governmental capacity as an advisor to the New Mexico Governor." Doc. 29-2 at 2 ¶ 4. Chambliss's affidavit goes a step further and claims Dunn told her I "had direct conversations with [NMHA's] legal counsel about the background and issues surrounding the fight between the tracks, the Horseman [sic] and the NMRC in his capacity working for the Governor."[8] Doc. 34-1. But

---

[7] During my time at the Governor's office, I dealt with a myriad of issues attendant to the operations of state agencies and other governmental entities. However, I do not recuse myself from cases merely because a state employee or governmental entity is a party to the litigation. Indeed, I hear cases involving the New Mexico Corrections Department, New Mexico Children, Youth, & Families Department, and numerous other state agencies. Other than this matter, no lawyer has ever requested my recusal on that basis.

[8] The Court, as it must, assumes the truth of these statements for purposes of assessing a motion to recuse under Section 144. However, as explained below, the Court notes that NMHA's counsel contradicted this statement and confirmed that he never had discussions with me about this matter. Doc. 47 at 8:21-12:6.

neither Alfortish nor Chambliss identify a case or provide any specifics relevant to their claims. *See White v. NFL*, Civil No. 4-92-906, 2008 U.S. Dist. LEXIS 33188, at *14 (D. Minn. Apr. 22, 2008) ("Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion and other nonfactual matters are not ordinarily sufficient to require recusal." (internal quotation marks omitted)) (collecting cases). Their affidavits simply parrot the information Dunn provided to them.

These unsubstantiated allegations—whether lodged through Dunn's affidavit or relayed through Alfortish or Chambliss—fall well short of meeting the "substantial burden" necessary to sustain a request for recusal under Section 144. *Hinman*, 831 F.2d at 939. It is incumbent on Alfortish to "state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." *Id.*; *see also United States v. Faul*, Nos. 3:83-cr-16, 3:99-cv-41, 2007 U.S. Dist. LEXIS 46816, at *14-15 (D.N.D. June 25, 2007) ("In order for an affidavit to be legally sufficient, it must [] provide specific facts, stated with particularity and must be definite as to times, places, persons, and circumstances." (internal quotation marks omitted)); *Brocato*, 4 F.4th at 301 ("A legally sufficient affidavit must: (1) state material facts with particularity; (2) state facts that, if true, would convince a reasonable person that a bias exists; and (3) state facts that show the bias is personal, as opposed to judicial, in nature."). But these requisite facts are omitted from Alfortish's motion and the accompanying affidavits; he provides only conclusory assertions that I was involved in this litigation while serving as a state employee. More is required, and because the affidavits do not meet this standard, Alfortish's request for recusal pursuant to Section 144 must be denied.

**C.    Alfortish does not provide an objective basis for recusal pursuant to 28 U.S.C. § 455(a).**

Alfortish also requests recusal pursuant to 28 U.S.C. § 455(a). To that end, Alfortish again asserts recusal is warranted "based upon the factual predicate that he was involved in this matter

in his governmental capacity on behalf of the Governor." Doc. 29 at 6. As explained above, there is no evidence to support Alfortish's claim. To the contrary, NMHA's counsel stated in open court that he and the undersigned "did not discuss this case at all," Doc. 45-1 at 10:20-21, and that during my time at the Office of the Governor "[t]his case wasn't even on [their] radar." *Id.* at 9:12-13.

To further assuage any concerns that I was somehow involved in the issues attendant to this litigation, the Court requested that NMHA's counsel provide the parties with any correspondence he sent to the Office of the Governor. He complied and sent four pieces of correspondence. Doc. 45-2. The first of these letters (as considered chronologically) was sent more than three years ago on February 27, 2021. *Id*. at 1-7. The apparent recipients include several elected officials (including the Governor of New Mexico), some political appointees, and various racetracks around the state. *Id*. at 1. The letter addresses the reopening of racetracks and casinos after the COVID-19 pandemic. *Id*. at 1-7. The second letter is a state tort claims notice addressing a dispute between the NMHA and the NMRC regarding the collection and distribution of purse money. *Id*. at 11-14. It is dated (and was presumably mailed) on October 12, 2021. *Id*. at 11. The third piece of correspondence was sent later that same year on December 27, 2021. *Id.* at 8-10. It was also delivered to elected officials, political appointees, and several privately employed lawyers. *Id*. at 8. The subject of that letter addresses concerns related to the operation of racetrack casinos while live horseracing was not taking place.[9] *Id*. The fourth and final letter was sent on August 28, 2023—nearly a year after my departure from state employment—and appears to be a

---

[9] Presumably, this was a situation that arose following reopening of racetracks and casinos following the COVID-19 pandemic.

general request for a meeting with the Governor.[10] *Id*. at 15. It does not specify a particular topic. *Id*.

Significantly, none of these letters address the specific factual issues in this case nor make any mention of the IHA. There is also nothing in this correspondence that corroborates Alfortish's assertions that undersigned was "involved in this matter in [my] governmental capacity on behalf of the Governor." Doc. 29 at 6. To the contrary, the Court cannot identify (and Alfortish is short on specifics) any discussion in those missives that address the matters presented in this litigation.

Following the filing of these letters, Alfortish submitted a request pursuant to the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1-14, wherein he apparently sought to obtain documents germane to his recusal motion.[11] Doc. 53-1. He then filed those materials as a "supplement" to his motion, but did not identify which, if any, of those documents support his position. Alfortish also did not provide any argument in support of his submission. Nevertheless, in an abundance of caution, the Court reviewed all fifty pages of those records. *See id*. These additional materials pertain to unrelated litigation with the NMRC (which is not a party to this case) regarding a dispute of withholding of purse money (which is not at issue in this matter). The only portion of the records that pertains—even indirectly—to an issue in the present matter is a memorandum discussing statutory law regarding interstate off-track wagering. *Id*. at 41-45. This document, which is sent from NMHA's counsel to the organization's board members, references a dispute with the NMRC, not the Racetracks. *See id*. at 44. Further, that

---

[10] My last day working in the Office of the Governor was September 30, 2022. *See* Press Release, Off. of the Governor, *Governor's office announces new interim leadership* (Sept. 9, 2022) (available at https://www.governor.state.nm.us/2022/09/09/governors-office-announces-new-interim-leadership/).

[11] Alfortish does not indicate the scope of his IPRA request, which agency he received these records from, or whether all of the documents he received were provided as part of his supplement.

correspondence is not addressed to me and there is nothing to suggest I ever saw that document. Perhaps most significantly, that memorandum does not indicate, or even intimate, that I took a position, served as counsel, or as a witness in any matter addressed therein.

Equally unavailing is Alfortish's suggestion that I should recuse from this matter because his counsel took over litigation wherein my former law partner, Molly Schmidt Nowara, and my former law firm were named as defendants (along with several others).[12] Although Alfortish suggests I was a named party to that suit averring I was "sued personally by virtue of [my] role as one of three principal [sic] of the defendant law firm," that is not accurate. Doc. 29 at 6. None of the various iterations of the complaint named me as a defendant nor were there any allegations against me personally.[13] In fact, I am not referenced individually anywhere in those pleadings.[14] *See, e.g.*, First Amended Complaint, *Kittner v. Schmidt-Nowara et al.*, No. D-1329-CV-2020-00993 (13th Jud. Dist. Ct. June 15, 2020); Fourth Amended Complaint, *Kittner*, No. D-1329-CV-2020-00993 (13th Jud. Dist. Ct. Aug. 31, 2020).

Regardless, that Dunn was counsel in a matter involving my former firm, which ceased operations more than six years ago, is insufficient grounds to warrant my recusal. District judges presented with similar claims have declined to recuse themselves. *See, e.g.*, *K & F Holdings, Ltd.*

---

[12] Other defendants were also named including United States District Court Judge David Urias, the law firm of Freedman, Hollander, Goldberg, Urias & Ward, and another lawyer named Steven K. Sanders.

[13] Dunn took over the *Kittner* case well after it began, and notably, it was the presiding United States Magistrate Judge's former firm, Mynatt Springer, P.C. f/k/a Mynatt Martinez Springer P.C., who initiated that litigation. No attorney from that firm has ever requested that I recuse myself from one of their cases, and none of the firms representing other parties in that litigation have ever requested this Court's recusal.

[14] Alfortish's motion references Judge Urias's prior order granting Dunn's request for recusal in the matter of *Springer v. Lujan Grisham*, 1:23-cv-00781 (D.N.M. Oct. 2, 2023), ECF No. 7. Doc. 29 at 2. However, Judge Urias was a named defendant in Kittner's lawsuit whereas I was not.

*v. Rouse's Enters., L.L.C.*, No. 16-293, 2017 U.S. Dist. LEXIS 154463, at *3 (M.D. La. Sep. 21, 2017) (describing prior proceedings where the district court denied a request for recusal where plaintiff's counsel had represented a litigant in a malpractice case against the presiding judge's successor law firm); *Donahue v. Kan. Bd. of Educ.*, No. 18-2012, 2018 U.S. Dist. LEXIS 230154, at *2-4 (D. Kan. Feb. 7, 2018) (denying recusal where members of plaintiff's family brought a malpractice suit against the judge's former law firm); *Houston v. United States*, No. 3:13-CR-10, 2020 U.S. Dist. LEXIS 29065, at *11 (E.D. Tenn. Feb. 20, 2020) (denying request for recusal where litigant had sued judge's former firm). And while "[t]here are a number of recusal cases involving judges' former law firms, [] it is rare that recusal is granted based only on a question of impartiality because of the judge's former affiliation." *Local 338, RWDSU v. Trade Fair Supermarkets*, 455 F. Supp. 2d 143, 144 (E.D.N.Y. 2006) (collecting cases). Indeed, judges at all levels have denied motions for recusal based on a litigant's claim that a connection to a former firm suggests impartiality. *See In re Apex Oil Co.*, 981 F.2d 302, 304 (8th Cir. 1992) (concluding Eighth Circuit judge's prior partnership in law firm that represented party involved in bankruptcy dispute at issue was not required to recuse himself). This Court can discern no basis to depart from the reasoning set out in this legal authority, and Alfortish has provided no grounds to do so.

## CONCLUSION

"[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *Aguinda v. Texaco, Inc.*, 241 F.3d 194, 201 (2d Cir. 2001). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002). And because Alfortish has made no legitimate demonstration of

bias nor demonstrated that an objective person would reasonably question this Court's impartiality, the motion is denied.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA