IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

NEW MEXICO HORSEMEN'S ASSOCIATION,

    Petitioner/Counter-Defendant/Defendant in Intervention,

v.                                                                                             No. 1:24-cv-00235-MLG-DLM

SUNRAY GAMING OF NEW MEXICO, L.L.C.,
dba SUNRAY PARK & CASINO,

    Respondent/Counterclaimant/Third-Party Plaintiff,

and

DOWNS AT ALBUQUERQUE, INC., dba
THE DOWNS RACETRACK & CASINO, and
ALL-AMERICAN RUIDOSO DOWNS, LLC, dba
RUIDOSO DOWNS RACETRACK AND CASINO,

    Plaintiffs in Intervention/Third-Party Plaintiffs,

v.

DR. PAUL JENSON, DVM, and
SEAN ALFORTISH,

    Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER ON
JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>ON ALL RACETRACK CLAIMS BASED ON INJUNCTON HEARING EVIDENCE</u>**

On November 22, 2024, the Court held an evidentiary hearing on several motions in this case. *See generally* Doc. 86. The Court resolved those motions via two separate orders. *See* Docs. 92 & 93. Now, the New Mexico Horsemen's Association, Dr. Paul Jenson, and Sean Alfortish (collectively, "NMHA") move for summary judgment based solely on evidence adduced during the hearing. *See generally* Doc. 87 ("Motion"). NMHA argues that SunRay Park & Casino ("SunRay"), the Downs Racetrack & Casino ("Albuquerque Downs"), and Ruidoso Downs

Racetrack and Casino ("Ruidoso Downs") (collectively, "Racetracks") violated the Interstate Horseracing Act ("IHA"), 15 U.S.C. § 3004(b)(1)(B), by collecting off-track wagers without the consent of the closest tracks in a bordering state, thereby precluding their counterclaims in this case. *Id.* at 7-12. The Court is unpersuaded and denies NMHA's Motion. Doc. 87.

## BACKGROUND

The facts of this case are well known to the Court. *See* Docs. 17, 92, and 93. Relevant here, NMHA's Motion[1] relies on testimony of three witnesses called during the November hearing: Max Moreland, general manager of SunRay; Rick Baugh, a long-time employee of Ruidoso Downs; and Don Cook, corporate representative for Albuquerque Downs. *See generally* Doc. 87-1 (hearing transcript excerpts); Doc 89-1 at 1 ¶ 1, 2 ¶ 3 (Moreland affidavit); Doc. 89-2 at 1 ¶ 1, 2 ¶ 5 (Baugh affidavit); Doc. 89-3 at 1 ¶ 1, 2 ¶ 5 (affidavit of Paul Blanchard, president of Albuquerque Downs, describing Cook's testimony). These witnesses testified that none of the horseracing tracks in New Mexico are located within 60 miles of another in-state racetrack. *See* Doc. 87-1 at 6, 21:5-9, 10, 48:8-14, 15, 103:7-10. Further, none of the Racetracks obtain written consent of tracks in adjoining states prior to simulcasting out-of-state races for betting purposes. Doc. 87 at 3-5; Doc. 87-1 at 6-7, 21:21-22:1, 11, 49:1-7, 15, 103:11-22. Following the hearing, the witnesses submitted affidavits confirming that the Racetracks have never asked for explicit permission to simulcast out-of-state races from the closest tracks in adjoining states.[2] *See* Doc. 89-1 at 2 ¶ 6; Doc. 89-2 at 2-3 ¶ 10;

---

[1] The Motion does not include a statement of numbered material facts as required by Rule 56.1(b) of this District's Local Rules of Civil Procedure. *See* Doc. 87 at 2-6. Counsel are reminded of their obligation to comply with the Local Rules' formatting requirements, which are intended to facilitate and expedite resolution of pending motions.

[2] Turf Paradise in Phoenix, Arizona and Bally's Arapahoe Park in Aurora, Colorado are the closest out-of-state tracks. Doc. 89 at 3 ¶¶ 5-6. There is some question as to which out-of-state track is closest to each individual Racetrack. *See id.* at 8. This uncertainty is immaterial because it is undisputed that the Racetracks sought consent from neither, regardless of proximity.

Doc. 89-3 at 2 ¶ 8. And based on these facts, NMHA argues that the Racetracks' counterclaims must be dismissed because the Racetracks illegally accepted off-track wagers without the requisite approvals. Doc. 87 at 10-13.

## DISCUSSION

As its title implies, the IHA governs interstate off-track wagering on horseracing. 15 U.S.C. § 3004 is the IHA's central provision and requires off-track betting systems to obtain consent or approval from a variety of groups before they can accept off-track wagers. Section 3004(b)(1) requires that host racetracks obtain approval to accept wagers on off-track simulcast races from either all in-state tracks within sixty miles or, if no such tracks exist, the nearest track in a bordering state. According to NMHA, the Racetracks undisputedly violated § 3004(b)(1) by accepting off-track wagers without the consent of the closest tracks in a bordering state. Doc. 87 at 10-12. Consequently, NMHA contends the Racetracks' unlawful actions preclude their state law tort claims.[3] *Id.* at 10 (citing *Inge v. McClelland*, 725 F. App'x 634, 638 (10th Cir. 2018)). The Court disagrees.[4]

The wrongful-conduct doctrine is a long-standing affirmative defense under state law recognizing that:

> [A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action . . . on a violation by himself of the criminal or penal laws.

---

[3] NMHA's attacks on the Racetracks' state and federal antitrust claims are moot because the Court dismissed those claims in a prior order. *See* Doc. 93 at 12-18.

[4] The parties also argue for differing interpretations of § 3004(b). *See* Doc. 89 at 6-8; Doc. 91 at 3-6. That dispute is irrelevant since NMHA's Motion fails at the threshold.

3

*Desmet v. Sublett*, 1950-NMSC-057, ¶ 9, 54 N.M. 355, 225 P.2d 141. NMHA argues that doctrine bars the Racetracks' counterclaims because the Racetracks admit their noncompliance with § 3004(b), and their acceptance of off-track wagers was thus "illegal." Doc. 87 at 10-12.

NMHA misapplies the rule. New Mexico courts have repeatedly observed that a violation of existing statutes does not inherently preclude recovery for tort or contract claims under the wrongful-conduct doctrine. *See, e.g.*, *Rodriguez v. Williams*, 2015-NMCA-074, ¶ 8, 355 P.3d 25 (holding that a plaintiff injured in a car crash could recover for injuries even though he drove under the influence); *Sierra Blanca Sales Co. v. Newco Indus., Inc.*, 1972-NMCA-153, ¶ 60, 84 N.M. 524, 505 P.2d 867 (holding the wrongful-conduct doctrine inapplicable where the plaintiff is not required to prove statutory compliance as an element of a contract claim); *Measday v. Sweazea*, 1968-NMCA-008, ¶ 22, 78 N.M. 781, 438 P.2d 525 ("Plaintiff's statutory violation does not prevent enforcement of the contract."). In *Measday*, for instance, a plumbing company sought to foreclose a mechanic's lien after the defendant stopped making payments on a balance for emergency repairs. 1968-NMSC-008, ¶¶ 3-6. The defendant argued that the plumbing company could not enforce the contract because it failed to obtain proper permits before beginning the repairs, thereby violating applicable regulations and engaging in wrongful conduct. *Id.* ¶¶ 7-8. The appellate court disagreed, reasoning that the contract was not an illegal instrument because it had "neither an invalid subject matter nor an invalid purpose" and "did not provide for nor require the violation of any law." *Id.* ¶ 11. Put differently, the wrongful-conduct doctrine focuses on the contract's ends and its required means, not the ancillary or collateral acts performed to fulfill it. *See id.* ¶ 20 ("If the contract as made could have been performed in a legal manner, the courts will not declare it void and unenforceable because it may have been performed in an unlawful manner." (citation modified)). So even though the plumbing company violated permitting statutes, the

4

contract was not illegal because it had a lawful purpose—repair of piping and payment of concomitant labor costs—and required no illegal acts. *See id.* ¶¶ 22-25. The wrongful-conduct doctrine did not bar recovery. *Id.* ¶ 22.

Here, the Racetracks seek damages for intentional interference with contract or, alternatively, prima facie tort. *See* Doc. 23 at 14-15. New Mexico state courts have not specifically addressed the wrongful-conduct doctrine as applied to these types of claims. An unpublished case in this District, however, is persuasive. *See Five Star Automatic Fire Prot., LLC v. Nuclear Waste P'ship, LLC*, Civ. No. 14-622, 2016 WL 9449458 (D.N.M. May 13, 2016) (hereinafter, *Five Star*). The plaintiff in *Five Star*, a fire protection subcontractor, sued for prima facie tort and intentional interference with contract after the defendants prevented the plaintiff from repairing a critical fire protection system at a nuclear waste site. *Id.* at *1. The defendants moved for summary judgment, contending that the wrongful-conduct doctrine barred the case because the plaintiff violated National Fire Protection Association ("NFPA") regulations and therefore could not legally perform the contracted work. *Id.* at *3. The court rejected that argument. *Id.* at *8. Relying on New Mexico's wrongful-conduct doctrine precedents, the court concluded that the alleged violations of NFPA standards were incidental or collateral to the plaintiff's claims. *Id.* at *6-8 (citing, among others, *Measday*, *Rodriguez*, and *Sierra Blanca Sales Co.*). The plaintiff was not required to show compliance with NFPA standards to prove its intentional interference and tort claims because, "as in *Measday*, the contract as made could have been performed in a legal manner" and was not void or unenforceable. *Id.* at *8 (citation modified). The court therefore determined the wrongful-conduct doctrine did not apply. *Id.*

As this precedent indicates, the Racetracks' failure to obtain consent in accordance with § 3004(b) is ancillary to their legal claims. The Racetracks do not seek to recover for breach of any

particular contract, legal or otherwise. *See generally* Doc. 23. Rather, the gravamen of their complaint is that NMHA intentionally disrupted existing off-track wagering contracts with the intent to harm the Racetracks' business. *Id.* at 14-15. Those allegations do not require proof that the contracts used by the Racetracks fully complied with § 3004(b). Like the plaintiff in *Five Star*, the Racetracks need only establish the elements of intentional interference with contract or prima facie tort, neither of which require substantive proof of the contracts' propriety. *See Deflon v. Sawyers*, 2006-NMSC-025, ¶ 16, 139 N.M. 637, 137 P.3d 577 (stating the elements of intentional interference with contract); *Grover v. Stechel*, 2002-NMCA-049, ¶ 19, 132 N.M. 140, 45 P.3d 80 (stating the elements of prima facie tort). The Racetracks' claims focus on NMHA's conduct, not their own statutory compliance. The Racetracks' conduct is therefore collateral. *See Five Star*, 2016 WL 9449458 at *8 (denying summary judgment because the plaintiff was "not attempting to recover based on its own wrongful, immoral, or illegal conduct").

Perhaps more importantly, NMHA provides no evidence that the contracts it allegedly disrupted were unlawful. It is undisputed that the Racetracks never obtained express approval to simulcast off-track races from Turf Paradise or Bally's. *See* Doc. 89 at 2-3. But that does not necessarily imply that the relevant contracts had an improper purpose. And neither party has provided the text of the relevant contracts, without which the Court cannot evaluate whether the terms require the parties to violate § 3004(b). *See Measday*, 1968-NMCA-008, ¶ 20; *Five Star*, 2016 WL 9449458, at *8. NMHA has not met its burden to establish, under the undisputed facts presented, that the wrongful-conduct doctrine bars the Racetracks' claims for intentional

6

interference with contract and prima facie tort.[5] *See Hutchinson*, 105 F.3d at 564. Consequently, NMHA is not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, NMHA's Joint Motion for Partial Summary Judgment on All Racetrack Claims Based on Injunction Hearing Evidence, Doc. 87, is denied.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[5] NMHA may file a motion intended "to test an affirmative defense which entitles [it] to a judgment as a matter of law." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). NMHA fails to meet the benchmark, however, because the undisputed fact that the Racetracks did not obtain express consent from out-of-state tracks pursuant to § 3004(b) does not bar their claims under the wrongful conduct doctrine. *See* Fed. R. Civ. P. 56(a) (requiring undisputed material facts *and* entitlement to judgment as a matter of law as prerequisites to summary judgment).