UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| NEW MEXICO HORSEMEN'S ASSOCIATION,<br><br>*Petitioner/ Counter-Defendant/ Defendant in Intervention,*<br><br>v.<br><br>SUNRAY GAMING OF NEW MEXICO, L.L.C., d/b/a SUNRAY PARK & CASINO,<br><br>*Respondent/Counterclaimant/ Third-Party Plaintiff,*<br><br>and<br><br>DOWNS AT ALBUQUERQUE, INC., d/b/a THE DOWNS RACETRACK & CASINO, and ALL-AMERICAN RUIDOSO DOWNS, LLC, d/b/a RUIDOSO DOWNS RACE TRACK AND CASINO,<br><br>*Plaintiffs in Intervention/ Third-Party Plaintiffs,*<br><br>v.<br><br>DR. PAUL JENSON, DVM, and SEAN ALFORTISH,<br><br>*Third-Party Defendants.* | Case No. 1:24-cv-00235-MLG-DLM<br>*Electronically Filed* |

**NMHA'S REPLY IN SUPPORT OF ITS RULE 13(h) MOTION TO JOIN BILLY SMITH, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW MEXICO RACING COMMISSION [DOC. 111]**

Petitioner and Counter-Defendant New Mexico Horsemen's Association ("NMHA") replies in support of its Rule 13(h) Motion to Join Billy Smith, in His Official Capacity as

Commissioner of the New Mexico Racing Commission [Doc. 111] (the "Motion"), and in response to the Racetracks' Response [Doc. 114] (the "Response").[1]

## INTRODUCTION

The Response is directed at pleadings that no longer exist. Its lead Rule 13(h) objection is that Counterclaim IV was pleaded against Commissioner Smith alone. Doc. 114 at 17–18. Within the time Rule 15(a)(1) allows, NMHA amended both pleadings that contain its counterclaims. Docs. 115, 116. Every count that names Commissioner Smith now also runs against the Racetracks, including Counterclaim IV. Am. Countercl. ¶¶ 62, 66, 71–79. The rule the Racetracks invoke is therefore satisfied on its own terms. What remains of the Response is (1) a request to decide the Racetracks' motion to dismiss first, (2) merits defenses that belong to Commissioner Smith, (3) a narrow reading of Rules 19 and 20 that ignores the joint conduct the Amended Counterclaims plead, and (4) an estoppel argument built on statements about the Commission as an entity, made in a motion the Court denied. None is a reason to deny joinder.

## ARGUMENT

### I. The Amended Counterclaims govern, and they satisfy Rule 13(h).

"[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect," and that rule "establishes to which complaint opposing parties should direct any subsequent motion." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991); *accord*

[1] This reply was prepared but, through a calendaring error, was not filed by its October 29, 2026 deadline. The error arose from the deadline for NMHA's response to the Racetracks' original motion to dismiss [Doc. 113], which the parties agreed need not be filed after NMHA filed its amended pleadings [Docs. 115, 116]. NMHA discovered the error today and has sought the Racetracks' position on its filing of this reply out of time. NMHA respectfully asks the Court to accept the reply under Fed. R. Civ. P. 6(b)(1)(B). If the Racetracks oppose that relief, NMHA will promptly file a formal motion for leave once their position is known. The Racetracks are not prejudiced: no ruling has issued on the Motion, and they have since filed a renewed motion to dismiss [Doc. 118] that re-argues the joinder issues addressed here.

*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Hunnicutt v. DeSantiago*, 429 F. Supp. 3d 905, 917 (D.N.M. 2019). Where an amended pleading leaves a pending motion's premise in place, "the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed.). The Court should treat the Motion as addressed to the Amended Counterclaims, which plead the same counts against the same parties.[2]

Measured against those pleadings, the Response's Rule 13(h) objection disappears. *AllTech* held that Rule 13(h) "cannot be used to assert a counterclaim or crossclaim solely against an unnamed party," and it denied joinder because "there are no common claims asserted against" the non-parties and the existing party. *AllTech Commc'ns, LLC v. Brothers*, 601 F. Supp. 2d 1255, 1260–61 (N.D. Okla. 2008). It cited with approval a decision "allowing counterclaim against non-party pursuant to Rule 13(h) because same counterclaim was already asserted against plaintiff." *Id.* at 1261. Here every count naming Commissioner Smith is a common claim against him and the Racetracks. Am. Countercl. ¶¶ 62, 66, 71–79. New parties are "properly joined . . . as additional parties to the counterclaim pursuant to Rule 13(h)" when the counterclaim against an existing party is before the court. *FDIC v. Bathgate*, 27 F.3d 850, 874 (3d Cir. 1994). *AllTech* expressly did not reach Rules 19 and 20. 601 F. Supp. 2d at 1261 n.4. Those rules govern, because Rule 13(h) permits persons to be added "in accordance with the provisions of Rules 19 and 20." *Nal II, Ltd. v. Tonkin*, 705 F. Supp. 522, 529 (D. Kan. 1989).

The Response's argument that the counterclaim against SunRay is a counterclaim in reply, Doc. 114 at 9, does not affect joinder of Commissioner Smith to the counterclaim against The

---

[2] If the Court prefers, NMHA will promptly re-file the Motion directed to the Amended Counterclaims. *Cf. D.R. Horton, Inc. v. Curb N., Inc.*, No. 07CV709 MV/RHS, 2008 WL 11409168, at *2 (D.N.M. Sept. 22, 2008) (denying as moot motions directed to a superseded complaint).

Downs and Ruidoso Downs in Doc. 115, which is a counterclaim in an answer. That issue is fully briefed in connection with the Racetracks' motion to dismiss, and the remedy the Racetracks' own authorities applied was to treat the pleading as a motion to amend and grant leave. *R&M Gov't Servs., Inc. v. Kaman Aerospace Corp.*, No. 2:24-cv-524-GJF-JHR, 2025 WL 1079023, at *1, *4 (D.N.M. Apr. 10, 2025); *Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.*, 175 F.R.D. 686, 687–88 (D. Kan. 1997).

## II. The Court should decide joinder first, or together with the motion to dismiss.

The Racetracks ask the Court to decide their motion to dismiss first or to hold the Motion in abeyance. Doc. 114 at 8–9, 19–20; *see* Doc. 118 at 26. The order of decision is committed to the Court's discretion, and courts in this Circuit have declined to make joinder wait on a dispositive motion: "The mere filing of Defendants' Motion should not forestall joinder," because "[c]onsiderable time will be wasted should the joinder be delayed pending briefing of the dismissal issues." *Okmulgee Cnty. Rural Water Dist. No. 2 v. City of Okmulgee*, No. CIV-06-167-KEW, 2006 WL 2251811, at *3 (E.D. Okla. Aug. 3, 2006). Joining a party makes "no finding that the [pleading] would survive a motion to dismiss." *Caldwell-Baker Co. v. S. Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1250 (D. Kan. 2002). The Racetracks lose nothing. Deciding their motion first, by contrast, would require the Court to rule on claims against Commissioner Smith without hearing from him, and then to hear the same issues again once he appears. If the Court decides the motions together, it should at least decline to dismiss claims against Commissioner Smith, and the claims bound up with them, before he is before the Court.

## III. The Racetracks' futility arguments are merits defenses that belong to Commissioner Smith, and they fail in any event.

The Racetracks may not assert futility on Commissioner Smith's behalf. "Current parties unaffected by a proposed amendment do not have standing to assert claims of futility on behalf of

proposed defendants"; such an argument "is a defense for [the new party] to assert, if at all." *Coleman v. Apple Eight Hosp. Mgmt., Inc.*, No. 16-1343-JTM, 2017 WL 1836974, at *3 (D. Kan. May 8, 2017); *accord Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *1 (D. Kan. Nov. 14, 2017). This Court has expressed the same concern, holding that the new party "will be free to raise" its defenses, "[b]ut he may do so only after the amendment is allowed and he is brought into the case." *Gutierrez v. Doe*, No. 2:25-cv-00290-KRS-JHR, 2025 WL 2689830, at *2–3 (D.N.M. Sept. 19, 2025). The Racetracks' own authority granted Rule 13(h) joinder over an existing party's futility objections and left the joined party's defenses for "a motion to dismiss filed after [service]." *Hedge Lane Shawnee, LLC v. CTW Transp. Servs., Inc.*, No. 24-CV-2131-KHV-TJJ, 2024 WL 4751392, at *4, *6–7 (D. Kan. Nov. 12, 2024). The futility argument also "seems to place the cart before the horse"; "[r]ather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008). And the Racetracks' futility arguments are now the subject of their own motion to dismiss the Amended Counterclaims. Doc. 118 at 20–25. NMHA will answer them there. They fail here for the following reasons.

*A. The Commission's consent is part of the IHA's consent scheme.* The Response says "nothing the Commission does when it gives its consent can violate the IHA." Doc. 114 at 10–11. The Sixth Circuit rejected the same premise in a horsemen's group's suit against members of a state racing commission. "[A] state law is preempted if it allows a host racing association to consent to interstate off-track betting in the absence of a written agreement with the horsemen's group." *Horseman's Benevolent & Protective Ass'n–Ohio Div., Inc. v. DeWine*, 666 F.3d 997, 1000 (6th Cir. 2012). Ohio had created a state-law path to consent that bypassed the horsemen's

group, and the court held: "Federal law preempts this alternative path." *Id.* at 1001; *see id.* at 1000–01 ("The horsemen's veto is an integral part of the Act . . . ."). The Racetracks say NMHA identifies no New Mexico law permitting wagering without the horsemen's group's consent. Doc. 114 at 11. The alternative path here is the Commission's own: it voted to "unrecognize" NMHA, directed Ruidoso not to contract with NMHA, and now treats track-created committees as the horsemen's group when it gives its consents. Am. Countercl. ¶¶ 30–32, 40, 53, 76. That is a state actor substituting its own choice of horsemen's group for the one the owners and trainers chose. *See Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162 F.4th 631, 638–39, 641 (6th Cir. 2025) (official-capacity suit; "Michigan can't craft its own consent requirement and call it a condition to legality."). The Racetracks' reliance on *Monarch* is misplaced. As the Sixth Circuit read it, *Monarch* concerned a commission's exercise of its own veto over consent. *Id.* at 642 & n.7. NMHA does not challenge the Commission's right to withhold its own consent. It challenges the Commission's substitution of a different horsemen's group for the one the owners and trainers chose. Federal courts routinely entertain such claims against racing commissioners in their official capacities. *See Horsemen's Benevolent & Protective Ass'n, Inc. v. Zonak*, No. 2:07-cv-00057, 2008 WL 11453695, at *3 (S.D. Ohio Sept. 23, 2008) ("[S]uit is permitted against the Racing Commission Defendants because Plaintiff seeks only injunctive and declaratory relief against them to prevent enforcement of [a state statute] as conflicting with controlling federal law."), *aff'd sub nom. DeWine*, 666 F.3d 997. Whether that conduct is preempted is a merits question; it is not frivolous, which is all *Ex parte Young* requires. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167–68 (10th Cir. 2012).

*B. Section 3006(a) does not displace* Ex parte Young. Federal courts "may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate,

federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). Congress displaced that remedy in *Armstrong* by combining "the sole remedy Congress provided" with "the judicially unadministrable nature" of the statute's text. *Id.* at 328. Neither is present. The IHA's consent requirements are concrete, and courts routinely apply them. *DeWine*, 666 F.3d at 1000–01. Nor is § 3006 a self-contained enforcement scheme. The statutes the Supreme Court has found preclusive "concerned statutes with self-contained enforcement schemes," each of which required plaintiffs to "comply with particular procedures and/or to exhaust particular administrative remedies." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 189 (2023) (citation omitted); *see Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1174 (10th Cir. 2001) ("[T]he Supreme Court has only found two remedial schemes that supplant § 1983."). Section 3006 has no such features. And Congress expressly declined to make it the vehicle for claims against the State: "Nothing in this chapter shall be construed to permit a State to be sued under this section other than in accordance with its applicable laws." 15 U.S.C. § 3006(d). That is the kind of "textual indication . . . that the remedy is to complement, rather than supplant," other remedies. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 122 (2005). This Court has applied the same reasoning to permit an *Ex parte Young* preemption claim after *Armstrong*, because "unlike the Medicaid Act in Armstrong, the TCA does not contain a sole remedy." *CNSP, Inc. v. Webber*, No. 17-0355 KG/SCY, 2020 WL 2745456, at *6 (D.N.M. May 27, 2020). The Tenth Circuit requires an equitable plaintiff to vindicate "a federal substantive right" of its own, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 903–04 (10th Cir. 2017), and the IHA names "the horsemen's group" as the party whose consent is required, 15 U.S.C. § 3004(a)(1)(A), and as an enumerated plaintiff, *id.* § 3006(a). This Court has held that claims for prospective relief against the Racing

Commission "are not subject to dismissal." *Carrillo v. Penn Nat'l Gaming, Inc.*, 172 F. Supp. 3d 1204, 1215–16 (D.N.M. 2016).[3]

*C. The Racetracks' status argument is circular.* The Response argues that NMHA cannot obtain relief reserved to "the horsemen's group, a status the Court has held NMHA has not established." Doc. 114 at 13. But that status is the question presented by the Racetracks' own Count I, which the Court has held "remains pending." Doc. 106 at 3. The Court held that it had "necessarily addressed NMHA's status under the IHA in resolving the Racetracks' motion to dismiss," but "that is not the same as formally adjudicating the Racetracks' distinct claim for declaratory relief." *Id.* Whether a party falls "within the class of plaintiffs whom Congress has authorized to sue" is a merits question about its cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014); *see Deer Creek Water Corp. v. City of Okla. City*, 82 F.4th 972, 978 (10th Cir. 2023). And whether *Ex parte Young* applies "does not include an analysis of the merits of the claim." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002). It "does not require us to ascertain whether state officials actually violated federal law." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (citation omitted). A proposed claim is futile only if it "would be subject to dismissal." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022) (citation omitted). A claim whose supposed defect is the very merits question the Court has held remains pending is not.

*D. The Arizona allegations are part of an ongoing violation, and NMHA may assert them.* The Response treats Commissioner Smith's threat to bar Arizona horsemen as a single past statement. Doc. 114 at 11–12. Count IV is not limited to it. It challenges the Commission's

---

[3] Count IV also invokes 42 U.S.C. § 1983. Whether § 1983 enforcement is incompatible with the IHA's scheme, *see Talevski*, 599 U.S. at 187, is a question for Commissioner Smith to raise, and the *Ex parte Young* remedy does not depend on it.

continuing non-recognition of NMHA, its continuing recognition of track-created committees, and the consents it gives on their strength each race meet. Am. Countercl. ¶¶ 32, 52–53, 75–77. What matters is "the present disparity," not "the past actions of the State." *Papasan v. Allain*, 478 U.S. 265, 282 (1986). The never-withdrawn threat confirms the Commission's "demonstrated willingness" to use its licensing power to control which horsemen's group consents. *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014); Am. Countercl. ¶¶ 47–52. NMHA may assert these claims. An association may sue for its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Owners and trainers licensed in New Mexico are NMHA's members, including the dual-licensed Arizona horsemen whom the threat targets. Am. Countercl. ¶¶ 19, 46. That membership arises on licensing, subject to opt-out, but *Hunt* did not "find it significant" that "membership" was "compelled." 432 U.S. at 345. Representing horsemen in the IHA consent process is NMHA's stated purpose. Am. Countercl. ¶ 19. And a request for declaratory and injunctive relief does not require individual participation. *Hunt*, 432 U.S. at 344; *NCAA v. Califano*, 622 F.2d 1382, 1392 (10th Cir. 1980). *Kowalski v. Tesmer*, 543 U.S. 125, 130–31 (2004), is a third-party-standing case about a "hypothetical" relationship; associational standing is a distinct doctrine resting on the members' relationship to the association. *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). NMHA also asserts its own injury: the Commission's practices interfere with NMHA's core function as the horsemen's group whose consent the IHA requires. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395

(2024) (standing where defendant's actions "directly affected and interfered with [the organization's] core business activities").

**IV. Rule 20 permits joinder.**

Rule 20 "requires only" that the claims against the party to be joined arise from the same transaction, occurrence, or series of transactions or occurrences as the claims against the existing party, and that they share at least one question of law or fact. *Hernandez v. Chevron U.S.A., Inc.*, 347 F. Supp. 3d 921, 964 (D.N.M. 2018). It "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* at 963. The Amended Counterclaims allege one series of occurrences: the Commission's vote to "unrecognize" NMHA, its directive to Ruidoso not to contract with NMHA, the Racetracks' refusal to deal with NMHA on the strength of that non-recognition, their substitution of committees the Commission approved, and the consents the Commission gives on those committees' say-so. Am. Countercl. ¶¶ 30–40, 73–74. The conduct is "intertwined and mutually dependent." *Id.* ¶ 74. A private party acts with the State when there is "a substantial degree of cooperative action" or "overt and significant state participation." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1454 (10th Cir. 1995). And where a member of the Racing Commission arranged the track's conduct, this Court has recognized that the track's actions under that arrangement can be state action. *Carrillo*, 172 F. Supp. 3d at 1219–20.

The Racetracks respond that the common questions "have already been decided." Doc. 114 at 18. They have not. The Court has held that the declaratory claim on NMHA's status "remains pending," Doc. 106 at 3, and Commissioner Smith has never been a party to any ruling. Nor is the Arizona allegation a separate transaction. It is pleaded as part of the same course of conduct: the Commission's use of its licensing power to determine whose consent counts, for the benefit of the Racetracks' import-simulcast business, alongside the Racetracks' reliance on the Commission's

non-recognition of NMHA. Am. Countercl. ¶¶ 47–53, 73. Rule 20 requires only a common question, not identical involvement by every defendant in every occurrence.

## V. Rule 19 independently supports joinder.

NMHA relies principally on Rule 20, but Rule 19 also applies. A declaration on horsemen's-group status that does not bind the Commission's officer would leave the Racetracks answering to a federal judgment on one side and the Commission's contrary position on the other. Am. Countercl. ¶ 78. The Tenth Circuit has found a substantial risk of inconsistent obligations where an absent sovereign, "unbound by the decision," could relitigate the same issue, including in an administrative proceeding. *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279–80 (10th Cir. 2012); *see United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (declaration "will not be binding on parties not joined to the action").

## VI. NMHA's prior statements are no reason to deny joinder.

The Racetracks argue that NMHA told this Court and the state court that the Commission could not be part of this case. Doc. 114 at 4–5, 19. The Tenth Circuit applies judicial estoppel "both narrowly and cautiously," and "only . . . when the position to be estopped is one of fact, not one of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015). Whether the Eleventh Amendment bars a suit is a legal position. The doctrine also asks whether the party "succeeded in persuading a court to accept that party's earlier position"; "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations.'" *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citation omitted). Here there was no success: the Court denied the motion in which NMHA made the statements. Doc. 106. And there is no inconsistency. Those statements were about the New Mexico Racing Commission as an entity, which NMHA said was protected by the Eleventh Amendment. Doc. 97 at 4 n.1, 8; Doc. 99 at 4. That remains true, and NMHA asserts no claim against the Commission.

Am. Countercl. ¶ 8. An official-capacity claim for prospective relief against a commissioner is a different matter. "Even if the Eleventh Amendment barred [the] suit against the [state commission], [the plaintiff] still could proceed with its suit against the individual commissioners." *MCI Telecomms. Corp. v. Pub. Serv. Comm'n of Utah*, 216 F.3d 929, 939 (10th Cir. 2000); *see Carrillo*, 172 F. Supp. 3d at 1215–16. NMHA also said the Commission was "a necessary party," and that the federal forum could not provide complete relief without it. Doc. 99 at 4. Joining the commissioner who administers the Commission's consents is the cure for that problem, not a reversal.

Nor is joinder "procedural fencing." Doc. 114 at 19. That *Mhoon* factor asks "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing,'" in deciding whether to hear a declaratory action at all. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). It says nothing about joinder under Rule 20. In any event, NMHA did not choose this forum; the Racetracks sued NMHA here for a declaration of its status. Doc. 23 at 9–10. NMHA asserted its counterclaims after the Court held that the status question remained pending and that the parties "may seek final disposition of Count I, whether by stipulation, motion, or any other lawful procedure." Doc. 106 at 3. The facts that bring Commissioner Smith into the case, including his threat to Arizona horsemen and the Racetracks' continued reliance on the Commission's non-recognition, are pleaded for the first time in the Amended Counterclaims. Am. Countercl. ¶¶ 32–33, 47–53, 73.

## CONCLUSION

The Court should grant the Motion, treat it as directed to the Amended Counterclaims [Docs. 115, 116], join Commissioner Smith as a counterclaim defendant, and deny the Racetracks' request to hold the Motion in abeyance.

Respectfully submitted,

*/s/ A. Blair Dunn*
A. Blair Dunn
abdunn@ablairdunn-esq.com
Jared R. Vander Dussen
Warba.llp.jared@gmail.com
WESTERN AGRICULTURE, RESOURCE &
BUSINESS ADVOCATES, LLP
400 Gold Ave SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 750-3060
*Counsel for NMHA*

*/s/ Douglas L. McSwain*
Douglas L. McSwain
(admitted *pro hac vice*)
dmcswain@bricker.com
BRICKER GRAYDON WYATT, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky 40507
(859) 233-2012
*Counsel for NMHA*

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused to be e-served a true and correct copy of the foregoing to counsel of record, this the 6th day of October 2026.

*/s/ A. Blair Dunn*
A. BLAIR DUNN